UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RAYMOND GRIFFIN,

                    Plaintiff,                    <u>MEMORANDUM & ORDER</u>
                                                  12-CV-4359(JS)(GRB)

          -against-

HON. JAMES DOYLE, individually and
in his official capacity; HON.
MICHAEL MULLEN, individually and
in his official capacity; DA
THOMAS J. SPOTA, individual and
in his official capacity; 18-B
ATTORNEY CHRISTOPHER BROCATO,
individually and in his official
capacity; JEFFREY LANGLAN,
individually and in his official
capacity; ROSALIND C. GRAY,
individually and in her official
capacity; BRIAN RAFFERTY,
individually and in his official
capacity; LAURAN TAN, individually
and in her official capacity; JAMES
HARNETT, Legal Aid, individually
and in his official capacity;
JOSEPH N. BRITELLI, Detective,
individually and in his official
capacity; JOSEPH C. LOEFFLER,
Detective, individually and in his
official capacity; KEVIN J. EARLY,
Detective, individually and in his
official capacity; WILLIAM R.
MALDONADO, Detective, individually
and in his official capacity; KEITH
JORDAN, individually and in his
Official capacity; ARRESTING OFFICER
ID SPD 34418, Suffolk County Police
Officer, individually and in his
official capacity; ERIC T.
SCHNEIDERMAN, Attorney General,
individually and in his official
capacity; BRIAN J. O'DONNELL,
individually and in his official
capacity; MONICA A. CONNELL,
individually and in her official

capacity; CHARLES SANDERS,
individually and in his official
capacity; BRIAN FISCHER,
Department of Correctional and
Community Supervision Commissioner,
individually and in his official
capacity; ANDREA EVANS, New York
State Division of Parole
Chairwoman; LISABETH ELOVICH,
Parole Board Commissioner;
CHRISTINA HERNANDEZ; KEVIN LUDLOW;
HENRY LEMONS; JAMES FERGUSON;
MICHAELA HAGLAR; WALTER SMITH JR.;
COMMISSIONER SALLY THOMPSON,
individually and in their official
capacities; YAPHANK CORRECTIONAL
FACILITY WARDEN, SUPERINTENDENT, OR
SHERIFF, individually and in their
official capacity; BRUCE S. YELICH,
Superintendent of Barehill
Correctional Facility, individually
and in his official capacity;
LAURIE ANN FOBARE, Law Library
Correctional Officer, individually
and in her official capacity;
SERGEANT KERRY, individually and in
his official capacity; D-1
DORMITORY OFFICERS CLARK and
DECOSSE, individually and in their
official capacities; JOHN AND JANE
DOES, individually and in their
official capacities,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:      Raymond Griffin, <u>pro se</u>
                    708 Corporate Drive
                    Goldsboro, NC 27534


For Defendants
Legal Aid
Defendants:         Wendy B. Shepps, Esq.
                    Podvey, Meanor, Catenacci, Hildner,
                        Cocoziello & Chattman, PC
                    570 Lexington Avenue, Suite 1600
                    New York, NY 10022

```
State Defendants:        Marsha W. Yee, Esq.
                         NYS Office of the Attorney General
                         200 Old Country Road, Suite 240
                         Mineola, NY 11501

County Defendants:       Megan E. O'Donnell, Esq.
                         Suffolk County Attorney's Office
                         H. Lee Dennison Building
                         100 Veterans Memorial Highway
                         P.O. Box 6100
                         Hauppauge, NY 11788

Doyle, Mullen,
Brocato, Officer
34418, O'Donnell,
Connell, Sanders,
Lemons, Does:            No appearances.

County Defendants:       Ralph J. Reissman, Esq.
                         Nassau County Attorney's Office
                         One West Street
                         Mineola, NY 11501
```

SEYBERT, District Judge:

Currently pending before the Court are: (1) a motion to dismiss by Legal Aid and James Harnett (the "Legal Aid Defendants") (Docket Entry 35); (2) a motion to dismiss by former state judges James F.X. Doyle and Michael Mullen, New York State Attorney General Eric T. Schneiderman, Assistant Attorney General Brian J. O'Donnell, Assistant Attorney General Monica A. Connell, Assistant Attorney General Charles Sanders, former Department of Corrections and Community Supervision Commissioner Brian Fischer s/h/a Brian Fisher, former Chairwoman of the New York State Parole Board ("NYSPB") Andrea Evans, NYSPB Commissioner Lisa Beth Elovich, NYSPB Commissioner Christina

Hernandez, NYSPB Commissioner Kevin Ludlow, NYSPB Commissioner Henry Lemons, NYSPB Commissioner James Ferguson, NYSPB Commissioner Michaela Haglar, NYSPB Commissioner Walter Smith Jr., NYSPB Commissioner Sally Thompson, Superintendent Bruce S. Yelich, Sergeant Kerry, Correction Officer Laurie Fobare, Correction Officer Clark, and Correction Officer Decosse (collectively, the "State Defendants") (Docket Entry 40); and (3) a motion to dismiss by the County of Suffolk, Suffolk County District Attorney Thomas J. Spota, III, Assistant District Attorneys Jeffery Langlan, Rosalind Gray, Brian Rafferty, and Lauren Tan, Suffolk County Police Department's Officer Keith Jordan, Detective William Maldonado, and Detectives Kevin Early, Joseph Loeffler, and Joseph Britteli (collectively, the "Suffolk County Defendants") (Docket Entry 50). For the following reasons, Defendants' motions are all GRANTED.

BACKGROUND

The Complaint consists of nearly fifty pages, organized into various numbered "complaints." The allegations are somewhat difficult to decipher, and the Court will draw from the Complaint's structure.

I. Complaint #1

The first complaint relates to an alleged unconstitutional arrest and conviction. (Compl. at 8.) Specifically, Plaintiff refers to events on July 20, 1999 during

4

which he was allegedly falsely arrested and maliciously prosecuted. (Compl. at 10.) On that date, Plaintiff was informed that he should report to the police station. (Compl. at 10.)

When Plaintiff arrived, Loeffler, Early, and Britteli questioned Plaintiff about a particular crime in which Plaintiff was suspected to have been involved. (Compl. at 11.) Different "tactics" were used on Plaintiff and questioning continued the next day. (Compl. at 11-12.) After seventeen hours of interrogation, Plaintiff alleges that he "involuntarily signed a statement." (Compl. at 12.) Ultimately, Plaintiff was arraigned for Robbery in the First Degree on July 21, 1999. (Compl. at 12.)

Thereafter, Loeffler, Early, and Britelli falsely testified against Plaintiff. (Compl. at 13.) In addition, prosecutors withheld potential Brady material. (Compl. at 14.) Although Loeffler, Early, Britelli, and prosecutor Rafferty knew that Plaintiff was innocent, they still prosecuted him. (Compl. at 14.)

On April 25, 2000, Plaintiff decided to take a plea because Judge Mullen told him that he may receive greater time if he went to trial. (Compl. at 15.) Plaintiff believed that the probability of a guilty verdict was high because his counsel, William Nash, was ineffective. (Compl. at 15.) Upon

Plaintiff's release in 2004, the New York State Department of Corrections and Community Supervision ("DOCCS") unconstitutionally imposed post-release supervision ("PRS") upon Plaintiff.  (Compl. at 15.)

In September 2004, Plaintiff was again incarcerated for "the attempt to resist arrest."  (Compl. at 16.)  While housed in the Yaphank Correctional Facility, Plaintiff received severe injuries, including a fractured chin and jaw and a laceration to his chin requiring stitches. (Compl. at 16.)  In 2005, Plaintiff was "sent back upstate to prison."  (Compl. at 16.)

## II. Complaint #2

Plaintiff's second complaint relates to an acquittal Plaintiff received in 2006. (Compl. at 8.)  Plaintiff was released in 2006, but he alleges that just six months after his release, false charges--specifically three misdemeanors--were lodged against him. (Compl. at 17.)  He claims he was falsely arrested, maliciously prosecuted, and discriminated against. (Compl. at 17.)

After a jury trial, Plaintiff was acquitted.  (Compl. at 18.)  According to Plaintiff, the District Attorney knew that Plaintiff was innocent but prosecuted him nonetheless.  (Compl. at 18-19.)  The Complaint asserts that the "bogus charges" resulted in a year of state prison and would "have not been

authorized had D.O.C.C.S. not illegally imposed five years of PRS and if the Brady material was not hidden to disclose [Plaintiff's] innocence." (Compl. at 19.)

III. Complaint #3

Plaintiff's third complaint pertains to a "coerced plea." (Compl. at 8.)

On August 13, 2008, Suffolk County Police Officer Keith Jordan "illegally seized" Plaintiff. (Compl. at 20.) Plaintiff was arrested in connection with a bank robbery, handcuffed to a desk, and questioned by Detective Maldonado. (Compl. at 21.) Plaintiff alleges that Maldonado threatened that Plaintiff would be sent to an out-of-state facility away from his family, thus coercing Plaintiff to sign a written statement in order to remain nearby. (Compl. at 21.)

In December 2008, Plaintiff filed an Article 78 Petition to prohibit the proceedings from moving forward until Plaintiff received a preliminary felony hearing and a true bill of indictment, and until the court heard his omnibus motion. (Compl. at 22.) Defendant Connell filed an opposition, in which Plaintiff alleges she made erroneous arguments.[1] (Compl. at 28.) Before the Article 78 Petition could be heard, though, "the court, counsel and prosecutor aided and abetted each other" to

---

[1] Plaintiff further asserts that Sanders "committed the same acts when Plaintiff filed a motion July 2010 for reargument." (Compl. at 29.)

induce Plaintiff take a plea.  (Compl. at 22-23.)  Specifically,
Judge Doyle offered Plaintiff twenty-seven years imprisonment,
Langlan and Spota withheld Brady material, and Brocato "failed
to exercise the adversarial proceedings principles . . . ."
(Compl. at 23.)

On July 15, 2009, at a Huntley hearing, Langlan "hid"
some of the pages of Plaintiff's omnibus motion.  (Compl. at
24.)  On that date, Plaintiff was ultimately "coerced" into
entering a plea.  (Compl. at 30.)  Further, counsel Harnett
"closed his ears and eyes" to the injustices and counsel Brocato
was ineffective.  (Compl. at 24.)  Plaintiff also generally
alleges that Spota, Doyle, Hartnett, and Brocato aided and
abetted one another to injure Plaintiff.  (Compl. at 25.)
Plaintiff ultimately received two and a half to five years plus
five years PRS.  (Compl. at 30.)

## IV. Complaint #4

"Complaint #4" pertains to a parole hearing for which
the sentence expired on August 13, 2012.  (Compl. at 9.)  On
either June or July 29, 2010, Plaintiff attended a parole board
meeting, during which commissioners Hernandez, Ludlow, and
Elovich denied him parole.  (Compl. at 31-33.)

There was another parole board meeting in October or
November 2010.  Although Plaintiff did not appear at the

8

meeting, the parole board maintained that Plaintiff had appeared. Evans was aware of such untruths. (Compl. at 33.)

Plaintiff requested an administrative appeal in July 2010 to review the parole board's decision denying him parole. (Compl. at 33.) Plaintiff also filed an Article 78 petition about these issues, during which he alleges that the Attorney General submitted "sham pleadings" in opposition. (Compl. at 34.)

## V. Complaint #5

"Complaint #5" relates to Plaintiff's treatment at Bare Hill Correctional Facility and asserts that Plaintiff's exhaustion of administrative remedies is futile. Plaintiff alleges that the officers at Bare Hill Correctional Facility would have prevented him from pursuing his administrative remedies. (Compl. at 9.)

Specifically, on February 15, 2012, at Bare Hill Correctional Facility, Plaintiff attempted to access the library. (Compl. at 36.) C.O. Forbare denied Plaintiff access, however. (Compl. at 36.) "[A] few days" later, Plaintiff filed a grievance about this incident. (Compl. at 36.) Plaintiff alleges that C.O. Kerry threatened Plaintiff about having made a grievance and that four months later, the grievance was denied. (Compl. at 37.)

Again in June 2012, Plaintiff alleges that Fobare denied Plaintiff access to the law library and ripped up his papers when he asked for a notary. (Compl. at 38.) Plaintiff was thereafter denied access to the library. (Compl. at 38.) Again, Plaintiff filed a grievance which was denied due to a lack of evidence. (Compl. at 38.)

In July 2012, Plaintiff was transferred from the C-Block to the D-Block in the Bare Hill Correctional Facility. (Compl. at 39-40.) On the D-Block, Plaintiff encountered C.O. Decosse, whom Plaintiff alleges is irrational. (Compl. at 40.) Defendant Fischer is aware that many of the officers in the facility are not stable, but turns a blind eye. (Compl. at 42.)

On August 17, 2012, Decosse denied Plaintiff access to the law library. (Compl. at 41.) Later, C.O. Clark hid a sign-up sheet for recreation. (Compl. at 42.) At some point in time, Plaintiff filed another grievance regarding the "animosity toward [him] and others." (Compl. at 42.) Nonetheless, officers continued to deny Plaintiff access to the law library and on August 19, 2012, Plaintiff was also denied access to religious services. (Compl. at 44.)

Plaintiff commenced the instant action on August 27, 2012.

The State Defendants, County Defendants, and Legal Aid Defendants now each move to dismiss the Complaint on various grounds.[2]  The Court will first address the applicable legal standard.  Where appropriate, the Court will offer a singular discussion on relevant points, rather than addressing the same point separately for each of the three motions.

## I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires

---

[2] Plaintiff has filed oppositions.  These oppositions are untimely, however, and have not been served on Defendants. Although the Court does not need to consider these untimely briefs, the Court has reviewed them and finds them to be without merit.

the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Statute of Limitations

First, although the Legal Aid Defendants do not move on this basis, both the State and County Defendants raise the applicable statute of limitations and assert that many of Plaintiff's claims are time-barred. The Court agrees.

Plaintiff commenced the current action on August 27, 2012. The statute of limitations for Plaintiff's claims pursuant to Section 1983 is three years. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); Daniel v. Safir, 175 F. Supp. 2d 474, 479 (E.D.N.Y. 2001); Blankman v. Cnty. of Nassau, 819 F. Supp. 198, 206 (E.D.N.Y. 1993). Accordingly, any events prior to August 27, 2009 are now time-barred.

Specifically, complaints #1, 2, and 3 all almost exclusively relate to events prior to August 27, 2009. Primarily, complaints #1-3 raise claims for false arrest, malicious prosecution, due process/fair trial, excessive force at the Yaphank Correctional Facility, and conspiracy. These claims are all subject to a three-year statute of limitations and accrued before Plaintiff commenced this action.

A claim's statute of limitations begins to accrue "when the plaintiff has 'a complete and present cause of action.'" Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091,

166 L. Ed. 2d 973 (2007) (citing <u>Bay Area Laundry & Dry Cleaning</u> <u>Pension Trust Fund v. Ferber Corp. of Cal.</u>, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997)). For example, a false arrest claim begins to run at the time "legal process was initiated" against the plaintiff. <u>Id.</u> at 390. Thus, Plaintiff's claims of false arrests between 1999 and 2008 are all time-barred. Similarly, Plaintiff's due process/fair trial, excessive force, and conspiracy were all complete and present causes of actions well before August 27, 2009.

As to Plaintiff's malicious prosecution claims, such claims accrue when the underlying criminal proceedings have been terminated. <u>See</u> <u>Murphy v. Lynn</u>, 53 F.3d 547, 548 (2d Cir. 1995). Here, the only plausible malicious prosecution claim is contained in complaint #2 pertaining to Plaintiff's July 11, 2006 arrest and his subsequent acquittal.[3] Although Plaintiff has not alleged the exact date of his acquittal, it is apparent that the acquittal took place more than three years before Plaintiff commenced the instant action. The relevant arrest took place in 2006 and the Complaint alleges specific events in mostly chronological order. The next event that the Complaint

_____

[3] To state a claim for malicious prosecution under Section 1983, a plaintiff must allege: (1) the commencement of a criminal proceeding, (2) lack of probable cause, (3) the proceedings were instituted with malice, and (4) the proceeding terminated in the plaintiff's favor. <u>See</u> <u>Boyd v. New York</u>, 336 F.3d 72, 76 (2d Cir. 2003). Plaintiff has not alleged that any of the other criminal proceedings terminated in his favor.

refers to is Plaintiff's arrest in August 2008. (Compl. at 20.)
Thus, Plaintiff's malicious prosecution claim is also time-
barred.

Accordingly, all claims accruing before August 27,
2009 are DISMISSED WITH PREJUDICE. The only remaining claims,
then, pertain primarily to those contained in complaints #4 and
#5 regarding the denial of parole and Plaintiff's stay at Bare
Hill Correctional Facility.

II. Denial of Parole

In his fourth complaint, Plaintiff essentially alleges
that the parole board, and specifically Commissioners Hernandez,
Ludlow, and Elovich denied him parole in June or July 2009.
(Compl. at 31-33.) He further alleges that he did not appear
for an additional parole board meeting, although it was
represented that he did appear and that Chairwoman Evans ignored
such violations. (Compl. at 33.) In addition, he asserts that
when he attempted to litigate these errors through an Article 78
proceeding, Attorney General Schneiderman submitted "sham
pleadings" in opposition. (Compl. at 34.) Finally, he alleges
that Schneiderman, Spota, the parole board commissioners, Evans,
Doyle, and Yelich conspired to "cover[] up blunders . . . as
they committed crimes against humanity." (Compl. at 34.) The
State Defendants assert that these claims are barred by the
Eleventh Amendment and absolute immunity. Similarly, the County

Defendants maintain that the prosecutors are absolutely immune. The Court agrees.

A. Eleventh Amendment

The State Defendants correctly assert that, insofar as Plaintiff's claims against them are in their official capacities, such claims are barred by the Eleventh Amendment.

The Eleventh Amendment bars suits for monetary damages against a state official acting in his or her official capacity. See Salvador v. Lake George Park Comm'n, No. 98-CV-1987, 2001 WL 1574929, at *2 (N.D.N.Y. Mar. 28, 2001). Further, the State has not waived its sovereign immunity for claims pursuant to Section 1983. See id. at *2 ("The United States Supreme Court has expressly held that Congress did not intend 42 U.S.C. § 1983 to abrogate the sovereign immunity of states."); Baker v. Dep't of Evntl. Conservation of State of N.Y., 634 F. Supp. 1460, 1463 (N.D.N.Y. 1986) (same).

Here, Plaintiff seeks only monetary damages against the State Defendants. Accordingly, all claims against them in their official capacities are DISMISSED WITH PREJUDICE.

B. Absolute Immunity

Furthermore, the State and County Defendants--namely, the Attorney General, Assistant Attorneys General, District Attorney, Assistant District Attorneys, and parole board

commissioners--are entitled to absolute immunity for Plaintiff's claims against them in their individual capacities.

"The entitlement of a government official to absolute immunity from suit for damages depends upon the function that such official performs." Quartaro v. Catterson, 917 F. Supp. 919, 948 (E.D.N.Y. 1996). Functions that are prosecutorial, judicial, or quasi-judicial are entitled to absolute immunity whereas functions that are investigatory in nature are subject to only qualified immunity. See, e.g., Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (holding that acts taken in a judicial capacity or that are closely associated with the judicial process are entitled to absolute immunity).

Here, Plaintiff brings suit against the parole board commissioners in connection with their decision to deny Plaintiff parole. (See Compl. at 31-33.) It is well established, however, that parole commissioners act in a quasi-judicial function in deciding parole, thus absolutely immunizing them from a Section 1983 suit.[4] See Montero, 171 F.3d at 761 ("[W]e join our sister circuits and hold directly that parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny, or revoke

---

[4] Although Commissioner Lemons has not made an appearance, Plaintiff's claims against him are also barred by absolute immunity.

parole."); Schwartz v. Dennison, 518 F. Supp. 2d 560, 570 (S.D.N.Y. 2007) (The parole commissioners' "decision to deny plaintiff parole clearly falls within the scope of absolute immunity."); Quaratararo, 917 F. Supp. at 949 ("[T]he Court concludes that the Parole Commissioners are entitled to absolute immunity for the performance of a quasi-adjudicatory function in denying the plaintiff's application for release on parole.").[5]

Similarly, Plaintiff alleges that the Attorney General submitted "sham pleadings" in opposition to Plaintiff's attempts to challenge denial of parole. (Compl. at 34.) It is unclear whether Plaintiff intends to name Assistant Attorney Generals O'Donnell, Connell, and Sanders[6], whom have not been properly

---

[5] Plaintiff also brings a claim against Chairwoman Evans in her role as supervisor. His allegations that Evans was aware of potential violations but did nothing are insufficient. "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). A supervisory official can nonetheless be held liable if he "participated directly in the alleged constitutional violation [or] . . . created a policy or custom under which [the] unconstitutional practices occurred, or allowed the continuance of such a policy or custom." Id. This Court has concluded that only personal involvement and a custom or practice survive as viable bases for supervisory liability. See Butler v. Suffolk Cnty., 289 F.R.D. 80, 95 n.8 (E.D.N.Y. 2013). Accordingly, awareness and/or negligence are not enough.

[6] For the same reasons articulated herein, any claims pertaining to legal arguments made by Connell and/or Sanders in 2009 and 2010 are also barred by absolute immunity. (See Compl. at 27-29.)

served.  Nonetheless, Plaintiff's claims relate solely to positions taken in memoranda and oppositions in the course of litigation.  In such situations, government lawyers are entitled to absolute immunity.  See Contreras v. Perimenis, --- F. App'x ----, 2014 WL 1409495, at *1 (2d Cir. Apr. 14, 2014) (affirming absolute immunity for Assistant Attorney General); Wang v. Logue, 351 F. App'x 510, 510 (2d Cir. 2009) (same); Rodriguez v. Schneiderman, No. 13-CV-0574, 2014 WL 2510754, at *8 (N.D.N.Y. June 4, 2014) (finding that Schneiderman was entitled to absolute immunity).

Likewise, Plaintiff seems to raise a claim involving District Attorney Spota and some Assistant District Attorneys ("ADA") and their involvement in Plaintiff's Article 78 proceeding.  (Compl. at 34.)  Spota's and the ADAs' functions were in the course of litigation and prosecution, and therefore they are entitled to absolute immunity as well.

Accordingly, Plaintiff's claims in complaint #4, which are alleged against Schneiderman, O'Donnell, Connell, Sanders, Evans, Elovich, Hernandez, Ludlow, Lemons, Ferguson, Haglar, Smith, and Thompson, as well as the claims against the additional aforementioned Defendants, are DISMISSED WITH PREJUDICE.

C. <u>Conspiracy</u>

Finally, Plaintiff also appears to allege that Schneiderman, Spota, the parole board commissioners, Evans, Doyle, Yelich, Tan and Gray were conspiring with one another. Aside from the fact that most of these individuals are entitled to absolute immunity, including judicial immunity as to Judge Doyle, <u>see</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991), the Court <u>sua</u> <u>sponte</u> finds that Plaintiff's claim is frivolous.

To state a claim under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

<u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999); <u>see also</u> <u>Morpurgo v. Inc. Vill. of Sag Harbor</u>, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010). Other than alleging that the relevant Defendants conspired with one another, Plaintiff provides absolutely no substantive allegations to support a conspiracy claim. Conclusory allegations of a conspiracy are insufficient. <u>See</u> <u>Browdy v. Kapre</u>, 131 F. App'x 751, 753 (2d Cir. 2005);

<u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002).

Moreover, given that Plaintiff cannot sustain an underlying claim for a constitutional violation regarding complaint #4 for the reasons previously articulated, his conspiracy claim in this regard also cannot stand. <u>See</u> <u>O'Bradovich v. Vill. of Tuckahoe</u>, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985."); <u>see also</u> <u>Nasca v. Cnty. of</u> <u>Suffolk</u>, No. 05-CV-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Because the Court has found no constitutional violation exists, dismissal of the Section 1985 claim is warranted." (collecting cases)). Accordingly, to the extent that Plaintiff raises a claim for conspiracy in complaint #4, it is DISMISSED WITH PREJUDICE.

## III. <u>Bare Hill Correctional Facility</u>

Finally, Plaintiff's complaint #5 pertains to the conditions and his treatment while housed at the Bare Hill Correctional Facility in 2012. Specifically, Plaintiff alleges, <u>inter</u> <u>alia</u>, that he was denied access to the law library and that particular officers within the facility are "irrational" and "unstable." (<u>See</u> <u>generally</u> Compl. at 36-44.) The State Defendants assert that these allegations are independent from

Plaintiff's additional claims and that venue is improper as to complaint #5. The Court agrees that venue is improper and that dismissal is therefore appropriate.

Venue is governed by 28 U.S.C. § 1391(b), which provides:

> [a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action based on "improper venue." FED. R. CIV. P. 12(b)(3).

When considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cartier v. Micha, Inc., No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Although the plaintiff has the burden of proving that venue is proper, "[a]bsent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue." Id. (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)). Where the

plaintiff asserts multiple claims, "venue must be proper as to each of the claims asserted, but a common factual basis between a claim where venue is proper and one where venue is improper may defeat dismissal of a claim for improper venue." Id. (citing E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), aff'd, McKeown v. Del. Bridge Auth., 23 F. App'x 81 (2d Cir. 2001)).

Here, there is no common factual basis between Plaintiff's first four complaints and complaint #5. In fact, each complaint relates to a specific series of events during a specific time period. Plaintiff's arrests and denial of parole are completely independent of the conditions at Bare Hill Correctional Facility.[7] Accordingly, Plaintiff must make a prima facie showing that venue is proper for these particular claims.

---

[7] The State Defendants did not formally move to sever. Nonetheless, even under such an analysis, severance would be appropriate. Rules 20 and 21 govern severance of claims. See FED. R. CIV. P. 20 & 21. Rule 20(a)(1) permits the joinder of multiple plaintiffs in an action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1). These elements are preconditions and both must be met for joinder to be proper. Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("As is clear from the plain language of Rule 20(a)(2), both criteria must be met for joinder to be proper."). Rule 21 provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. In deciding whether to sever a claim under Rule 21, courts generally consider, in addition to the preconditions set forth

As mentioned, complaint #5 relates solely to conditions and treatment at Bare Hill Correctional Facility. Bare Hill, though, is located in Malone, New York in the Northern District of New York. See Vincent v. Yelich, No. 08-CV-6074, 2009 WL 112956, at *1 (W.D.N.Y. Jan. 15, 2009). Furthermore, the events giving rise to Plaintiff's claims occurred in the Northern District and the State Defendants against whom Plaintiff raises these claims reside in the Northern District. See Pisani v. Diener, No. 07-CV-5118, 2009 WL 749893, at *7 (E.D.N.Y. Mar. 17, 2009) ("Moreover, [f]or venue purposes, public officials are deemed to reside in the district in which they perform their official duties." (internal quotation marks and citation omitted) (alteration in original)). Thus, venue in the Eastern District of New York is not proper.

The question then becomes the proper remedy. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28

in Rule 20(a), "[1] whether settlement of the claims or judicial economy would be facilitated; [2] whether prejudice would be avoided if severance were granted; and [3] whether different witnesses and documentary proof are required for the separate claims." Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013) (quoting Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)). None of these elements or conditions weighs in favor of severance.

U.S.C. § 1406(a). The Court has discretion in determining whether to dismiss or transfer. Vincent, 2009 WL 112956, at *1 (citations omitted). The State Defendants assert that the Court should not transfer, in part, because "the Northern District of New York would be burdened with a case that [Plaintiff] appears to have abandoned." (State Defs.' Br., Docket Entry 40-1, at 8.) After the State Defendants submitted their brief, Plaintiff did submit an opposition--albeit untimely--and several letters indicating that he did intend to proceed with the action. (See, e.g., Docket Entries 44, 51, 56.) Accordingly, the Court does not find a failure to prosecute here.[8]

Nonetheless, transfer is inappropriate. Plaintiff's allegations in complaint #5 pertain to events occurring in February 2012 and later. Accordingly, the three-year statute of limitations applicable to Section 1983 actions in New York has not yet run. See Japan Press Serv., Inc., 2013 WL 80181, at *14 ("A 'compelling reason' for transfer, in lieu of dismissal, exists where the plaintiff would be prevented from re-filing the

_____

[8] Although courts have discussed lack of diligence more in the context of commencing the initial case than in the context of delay during the course of litigation, the State Defendants' position that the Northern District should not be saddled with a case that Plaintiff may have abandoned does not lack apparent validity. Cf. Japan Press Serv., Inc. v. Japan Press Serv., Inc., No. 11-CV-5875, 2013 WL 80181, at *14 (E.D.N.Y. Jan. 2, 2013) ("[A] transfer is not in the interest of justice where it 'would reward plaintiffs for their lack of diligence in choosing a proper forum.'" (quoting Spar, Inc. v. Info. Resources, Inc., 956 F.2d 392, 394 (2d Cir. 1992)).

action in the proper forum because it is time-barred." (citing Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005)).

Moreover, the interests of justice do not otherwise favor transfer over dismissal. Plaintiff was housed at Bare Hill and should have known that it is in the Northern District. See id. at *15 (holding that the plaintiff should have known that venue was not appropriate). Thus, Plaintiff's claims in complaint #5 are DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, each of the motions to dismiss filed by the Legal Aid Defendants, the State Defendants, and the County Defendants is GRANTED. All of Plaintiff's claims are DISMISSED WITH PREJUDICE with the exception of the claims regarding Bare Hill Correctional Facility outlined in complaint #5, which are DISMISSED WITHOUT PREJUDICE and with leave to commence them in the proper venue.

The Court additionally notes that, although some Defendants have not appeared or have not been properly served, the legal principles expressed herein apply equally to them as well.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied

for the purpose of an appeal.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBER
Joanna Seybert, U.S.D.J.

Dated:    June __30__, 2014
          Central Islip, New York